UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
LEONARD PINA-RODRIGUEZ,
                Plaintiff,

v.

BRITTA VIERECKL-PRAST, Dental
Director—Regional for NYSDOCCS;
KENNETH CONICELLI, DDS, Dentist
Fishkill Correctional Facility; M. SALEH,
Dentist, Fishkill Correctional Facility; GARY
GARBUTT; and MULTI-DIAGNOSTIC
SERVICES, INC.,
                Defendants.
--------------------------------------------------------------x

**OPINION AND ORDER**

18 CV 5167 (VB)

Briccetti, J.:

      Plaintiff Leonard Pina-Rodriguez brings this action pursuant to 42 U.S.C. § 1983 against defendants Drs. Britta Viereckl-Prast, Kenneth Conicelli, and M. Saleh, medical employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), as well as Gary Garbutt and Multi-Diagnostic Services, Inc. Plaintiff alleges Eighth Amendment claims for deliberate indifference to his serious medical needs.

      Now pending is the motion of Drs. Viereckl-Prast, Conicelli, and Saleh to dismiss the amended complaint. (Doc. #49).

      For the following reasons, the motion is GRANTED.[1]

---

[1] Defendant Multi-Diagnostic Services, Inc., has filed an answer to the amended complaint. (Doc. #47).

      By letter dated August 27, 2019, in response to the Court's June 28, 2019, Amended Order of Service (Doc. #30), which instructed the Office of the Attorney General to ascertain the identity of the Jane Doe defendant listed in the amended complaint, the Attorney General identified the Jane Doe defendant as Gary Garbutt, a former employee of Multi-Diagnostic Services, Inc. (Doc. #37). By Order dated September 5, 2019, the Court directed the Clerk to replace the Jane Doe defendant on the docket with Garbutt (Doc. #40), and by Order dated September 6, 2019, the Court instructed the U.S. Marshals Service to serve Garbutt. (Doc. #42).

1

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.  Plaintiff's Medical History and Treatment

According to plaintiff, in 2013, he was diagnosed with a misaligned jaw, and fitted with orthodontic braces and a metal bar on the roof of his mouth.  About one year later, plaintiff underwent one of two oral surgeries to correct his jaw misalignment.  However, in June 2016, before plaintiff could undergo the second surgery allegedly needed to correct the misalignment, he was committed to DOCCS custody.

Plaintiff alleges that when he first entered DOCCS custody at Downstate Correctional Facility ("Downstate"), he underwent three medical and dental intake examinations.  Plaintiff claims that on one of these occasions, a dentist recommended his orthodontic braces be removed.  Plaintiff disagreed with this recommendation, "as he was instructed by his [private doctor] that [his braces] were very important and extremely necessary to . . . correcting and aligning his misaligned jaw."  (Doc. #23 ("Am. Compl.") ¶ 14).

---

Garbutt was subsequently served by mail on September 25, 2019 (Doc. #46), but has neither answered nor appeared in this action.

In a letter to defense counsel dated September 13, 2019, plaintiff states he is "positive that it was a female" technician who administered his MRIs, not a male, and thus not Garbutt. (See Doc. #45).  Accordingly, during the initial telephone conference scheduled for July 30, 2020, the Court will address the pendency of this action as against Garbutt and whether Multi-Diagnostic Services, Inc., has any information about a female technician who allegedly administered plaintiff's MRIs in February and March of 2018.

In July 2016, plaintiff was transferred to Ulster Correctional Facility, where he alleges he had an additional medical intake examination. Shortly thereafter, plaintiff was again transferred, this time to Fishkill Correctional Facility ("Fishkill"). Plaintiff alleges that on August 4, 2016, following his transfer to Fishkill, Dr. Conicelli reviewed his medical file and dental charts, which noted plaintiff's misaligned jaw diagnosis and dental hardware.

Plaintiff alleges that on August 29, 2016, about four weeks after his transfer to Fishkill, he presented to Dr. Conicelli for an emergency dental sick-call. Plaintiff states he informed Dr. Conicelli of his dental work and complained of headaches and pain while talking, eating, and sleeping. Plaintiff also states he told Dr. Conicelli he did not want his braces removed because "it would ruin the ortho surgery [that] was done," and that he wanted to see an outside orthodontist. (Am. Compl. ¶ 18). Dr. Conicelli noted one of plaintiff's orthodontic brackets had debonded from one of plaintiff's teeth, and allegedly told plaintiff he would advise Regional Dental Director Dr. Viereckl-Prast of plaintiff's condition.

Plaintiff next alleges that on October 7, 2016, he again presented to Dr. Conicelli for an emergency dental sick-call, and complained of headaches and pain. According to plaintiff, Dr. Conicelli stated that per DOCCS policy, "all we can do is remove" the braces, and that if plaintiff wanted to see an outside orthodontist, he would need to do so at his own expense. (Am. Compl. ¶ 19).

Plaintiff states that four months later, on February 2, 2017, he was seen by Dr. Viereckl-Prast at an emergency dental sick-call, and complained of headaches and continuing pain. According to plaintiff, Dr. Viereckl-Prast explained DOCCS could not provide orthodontic surgery as plaintiff requested, and that plaintiff would be scheduled for a consultation with an oral surgeon. One month later, on March 1, 2017, plaintiff allegedly was seen by Dr. Saleh, and complained of headaches and severe pain in his mouth and face.

3

On June 26, 2017, while at another emergency dental sick-call, plaintiff alleges he again complained to Dr. Conicelli of terrible headaches and pain. Dr. Conicelli prescribed Motrin to manage plaintiff's pain. Plaintiff claims that three days later, on June 29, 2017, he complained to Dr. Saleh that the prescribed Motrin was not alleviating his discomfort. About one week later, on July 5, 2017, plaintiff again presented to Dr. Saleh, and again stated the prescribed Motrin was not helping. Dr. Saleh then prescribed Ibuprofen.

On July 21, 2017, plaintiff was transported to Westchester Medical Center ("WMC") for a consultation with non-party Dr. Frank Weber. According to plaintiff, Dr. Weber noted plaintiff required surgery and would recommend same to DOCCS staff at Fishkill.

Plaintiff further claims that on August 16, 2017, he was seen by Dr. Saleh at Fishkill, complained of continuing pain and headaches, and noted the Ibuprofen was not helping. Dr. Saleh prescribed additional Ibuprofen and informed plaintiff he would be scheduled for another outside examination by a specialist.

On September 8, 2017, plaintiff was again transported to WMC to see Dr. Weber. According to plaintiff, Dr. Weber again told plaintiff he required surgery and would recommend same to DOCCS staff at Fishkill.

According to plaintiff, from September 26, 2017, through February 7, 2018, he was seen eleven times by Dr. Saleh, once by Dr. Conicelli, and once by Dr. Viereckl-Prast. During this timeframe, the doctors attempted to manage plaintiff's complained-of pain with Ibuprofen and Motrin. Moreover, plaintiff alleges that in October 2017, he was transported to Collins Correctional Facility and then to Erie County Medical Center for examinations by their respective dental departments. And in November 2017, plaintiff allegedly was examined by non-party Dr. Jario Bastidas, an Oral and Maxillofacial Surgery specialist at Montefiore Medical

4

Center at Albert Einstein College of Medicine. According to plaintiff, Dr. Bastidas told plaintiff to visit again once he was released from prison.

Plaintiff further alleges that on February 14, 2018, he underwent an MRI, which was performed in an outside trailer at Fishkill, by a nurse practitioner employee of Multi-Diagnostic Services, Inc. Before the MRI was completed, plaintiff allegedly informed the nurse practitioner of his orthodontic hardware.

Plaintiff alleges he experienced even worse pain in his mouth and face following, and because of, the MRI on February 14, 2018. According to plaintiff, on nine occasions between March 6 and May 1, 2018, he complained of such pain to Drs. Conicelli, Saleh, and Viereckl-Prast. On March 12, 2018, Dr. Viereckl-Prast prescribed Motrin for plaintiff's pain. Then, on March 20, 2018, Dr. Viereckl-Prast changed plaintiff's medication prescription to Naproxen, and noted plaintiff's MRI results could not properly be read because of plaintiff's orthodontic hardware. Accordingly, she noted plaintiff's braces needed to be removed before a second MRI could be performed. A week later, on March 27, 2018, plaintiff allegedly told Dr. Saleh the Naproxen was not alleviating his pain. Dr. Saleh continued plaintiff's Naproxen prescription.

Plaintiff further alleges that on April 5, 2018, he was examined by non-party dental specialist, Dr. Jack Tse, who, like Dr. Viereckl-Prast, told plaintiff his orthodontic braces needed to be removed so that a second MRI could be administered.

Plaintiff also alleges that on April 13, 2018, at Downstate, non-party Dr. William Stolfi removed plaintiff's orthodontic hardware. At Fishkill five days later, and again on May 1, 2018, plaintiff states he complained to Dr. Saleh of severe, continued pain in his mouth and face. Dr. Saleh continued plaintiff's Naproxen prescription on both occasions.

Plaintiff further claims that on May 10, 2018, one month after his braces were removed, he underwent a second MRI. On May 14 and 25, 2018, plaintiff allegedly complained to Dr.

5

Saleh of continuous pain, and that the Naproxen was not helping in that regard. Dr. Saleh noted that he was still waiting for plaintiff's MRI results, and continued plaintiff's Naproxen prescription.

According to plaintiff, on June 5, 2018, Dr. Saleh noted plaintiff's second MRI "was clean," showing nothing to which he could attribute plaintiff's alleged pain. (Am. Compl. ¶ 65). Dr. Saleh continued plaintiff's Naproxen prescription. Dr. Tse also reviewed plaintiff's MRI results and concurred with Dr. Saleh's assessment.

Plaintiff further alleges that one month later, on July 6, 2018, and on six additional occasions between July 20 and September 20, 2018, plaintiff complained to Dr. Saleh of continued and severe pain in his mouth and face. Dr. Saleh consistently informed plaintiff that the MRI showed no cause for pain, and refused to prescribe additional medication. Plaintiff also claims that on September 5, 2018, Dr. Conicelli too refused to prescribe plaintiff additional medication in light of plaintiff's second MRI results.

According to plaintiff, on September 28 and October 11, 2018, Dr. Viereckl-Prast examined plaintiff, reviewed his medical file, and, like Drs. Saleh and Conicelli, refused to prescribe plaintiff additional medication. According to plaintiff, Dr. Viereckl-Prast told him to "stop coming to dental sick-call." (Am. Compl. ¶ 76).

On October 12, 2018, plaintiff allegedly was seen by an unidentified nurse practitioner, who referred plaintiff to a medical doctor. That day, the unidentified medical doctor allegedly prescribed Motrin to plaintiff. Later that month, a different medical professional allegedly recommended physical therapy to manage plaintiff's pain. And on November 30, 2018, a physical therapist allegedly "highly recommended" plaintiff be seen by DOCCS dental staff.

Plaintiff alleges that on December 3, 2018, Dr. Saleh again examined plaintiff, "referred to previous consults and notes, . . . refused to do anything for Plaintiff, and refused to provide anything for the pain."  (Am. Compl. ¶ 83).

II.     Plaintiff's Grievance Submissions

Plaintiff alleges that on January 25, 2018, he filed a grievance respecting the alleged inadequacies of his medical treatment, and that, after receiving a response from the Inmate Grievance Resolution Committee ("IGRC"), he appealed his grievance to the facility superintendent on February 8, 2018.  Plaintiff further alleges the superintendent responded to his grievance on February 14, 2018, and that he then appealed his grievance to the Central Office Review Committee ("CORC") on February 19, 2018.

On August 28, 2018, nearly three months after plaintiff commenced this case, plaintiff submitted a second grievance to the IGRC.  On September 12, 2018, plaintiff appealed his second grievance to the superintendent, and on September 20, 2018, further appealed the grievance to CORC.

Plaintiff claims that as of April 15, 2019, CORC had not responded to either grievance. (See Am. Compl. ¶ 7).

## DISCUSSION

I.      Legal Standard

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled

---

[2] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.   Exhaustion

Defendants argue plaintiff's amended complaint should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.

The Court agrees with defendants inasmuch as plaintiff's claims concern conduct alleged to have occurred after January 25, 2018, but otherwise disagrees with defendants.

Under Rule 12(b)(6), dismissal on the grounds of lack of exhaustion is appropriate when, on the face of the complaint, it is clear plaintiff did not exhaust all remedies, including all administrative appeals, before commencing the action. Woodford v. Ngo, 548 U.S. 81, 90–93 (2006). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

For a New York state prisoner to exhaust his claim, he must comply with the three steps of New York's Inmate Grievance Program: (i) submitting a complaint to the clerk of the IGRC within twenty-one days of the alleged incident, (ii) appealing the decision to the superintendent within seven days of the IGRC's response, and (iii) appealing to CORC within seven days of the superintendent's response. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5. CORC generally has "30 calendar days" to render a decision on a grievance appeal. Id. § 701.5(d).

"Nevertheless, an inmate need not exhaust administrative remedies if those remedies are unavailable." Smith v. Loiodice, 2020 WL 1033644, at *4 (S.D.N.Y. Mar. 2, 2020).[3] An administrative remedy is "functionally unavailable" when "it operates as a simple dead end," or is "so opaque that it becomes, practically speaking, incapable of use," or when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. (quoting Ross v. Blake, 136 S. Ct. 1850, 1859–60 (2016)).

Courts in this Circuit are split regarding whether CORC's failure to respond to a grievance appeal renders exhaustion functionally unavailable. See Smith v. Loiodice, 2020 WL 1033644, at *4 n.1 (collecting cases).

---

[3] Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Here, plaintiff's appeal to CORC of his first grievance, submitted February 19, 2018, had been pending for nearly four months when plaintiff commenced this action. Accordingly, although plaintiff did not wait to receive a decision from CORC prior to commencing this case, at this stage of the proceedings, and because plaintiff commenced this lawsuit about 106 days[4] after he appealed his grievance to CORC, the Court concludes exhaustion is functionally unavailable and declines to dismiss plaintiff's amended complaint on exhaustion grounds with respect to defendants' alleged conduct on or before January 25, 2018. See Peoples v. Fischer, 2012 WL 1575302, at *6 (S.D.N.Y. May 3, 2012) ("When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination."); see also Mayadeunas v. Bigelow, 2019 WL 3955484, at *4 (N.D.N.Y. Aug. 22, 2019) (noting "the Court . . . has trouble finding that the Second Circuit would not place a reasonable limit on the time in which CORC must issue a decision (or have the prisoner's appeal be deemed by federal court to be effectively denied)").

However, plaintiff's claims in this action are premised partially on conduct that occurred after plaintiff submitted his first grievance. Thus, on its face, the amended complaint contains allegations concerning conduct for which plaintiff has not fully exhausted his administrative remedies—namely, conduct alleged to have occurred after January 25, 2018. And such

---

[4] Although plaintiff's initial complaint is not dated, the envelope in which plaintiff mailed his original complaint is postmarked June 5, 2018. (See Doc. #2 at ECF 18).

Citations to "ECF __" refer to page numbers automatically assigned by the Court's Electronic Case Filing system.

allegations are not saved by plaintiff's second grievance, which was submitted on August 28, 2018, because it was filed nearly three months <u>after</u> this action was commenced.

Accordingly, plaintiff has failed to fully exhaust his administrative remedies inasmuch as his claims concern conduct of Drs. Viereckl-Prast, Conicelli, and Saleh alleged to have occurred after January 25, 2018.

III. <u>Deliberate Indifference to Serious Medical Needs Claims</u>

Defendants also move to dismiss plaintiff's amended complaint because his allegations do not plausibly state Eighth Amendment claims for deliberate indifference to his serious medical needs.

The Court agrees.

A. <u>Legal Standard</u>

To state a claim for constitutionally inadequate medical care, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). This test has an objective prong and a <u>mens rea</u> prong: a plaintiff must plausibly allege (i) a "sufficiently serious" inadequacy of medical care, and (ii) that the officials in question acted with a "sufficiently culpable state of mind." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective prong has two subparts. First, a plaintiff must adequately plead he "was actually deprived of adequate medical care." <u>Salahuddin v. Goord</u>, 467 F.3d at 279. Because "the prison official's duty is only to provide reasonable care," prison officials violate the Eighth Amendment only if they fail "'to take reasonable measures' in response to a medical condition." <u>Id</u>. at 279–80 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 847 (1994)). Second, a plaintiff must plausibly allege "the inadequacy in medical care is sufficiently serious." <u>Id</u>. at 280. Courts assess this by examining "how the offending conduct is inadequate and what harm, if any, the

inadequacy has caused or will likely cause the prisoner." Id.  If the allegedly offending conduct "is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." Id.  But if the offending conduct is the "medical treatment given, the seriousness inquiry is narrower." Id.  "For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." Id.

The mens rea prong requires the plaintiff to plausibly allege "the official acted with deliberate indifference to inmate health." Salahuddin v. Goord, 467 F.3d at 280.  Mere negligence does not give rise to an Eighth Amendment violation. See Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010).  Accordingly, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle v. Gamble, 429 U.S. at 106.  In other words, medical malpractice does not rise to the level of a constitutional violation unless the malpractice involves culpable recklessness.  See Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998).

"[D]istinguishing between negligent and reckless medical care is a difficult task, especially at the motion-to-dismiss stage where courts lack the benefit of expert opinion." Zhang v. City of New York, 2018 WL 3187343, at *8 (S.D.N.Y. June 28, 2018).  Courts often look to the "degree of risk associated with the negligent treatment." See id. (collecting cases).  Moreover, "mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to" a constitutional violation. Chance v. Armstrong, 143 F.3d at 703.  "Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate

12

grounds for a Section 1983 claim." Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 203, 312 (S.D.N.Y. 2001).

B. Personal Involvement

To adequately plead a Section 1983 claim, a plaintiff must also "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. at 676. Indeed, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983." Wright v. Smith, 21 F.3d 496, 501 (2d. Cir. 1994).

C. Application

Even if plaintiff's allegations, which the Court accepts as true, are sufficient to satisfy the objective prong of the constitutional analysis, plaintiff fails plausibly to allege Drs. Viereckl-Prast, Conicelli, and Saleh acted with deliberate indifference to his health and medical needs. Plaintiff acknowledges he was examined on nearly seventy separate occasions, by both DOCCS staff and outside medical personnel, and that at least forty-six of those instances comprised examinations by Drs. Viereckl-Prast, Conicelli, and Saleh. Thus, there is no plausible allegation in the amended complaint suggesting Drs. Viereckl-Prast, Conicelli, and Saleh intentionally or recklessly delayed plaintiff's treatment, or consciously disregarded a serious risk to plaintiff's health and safety.

Moreover, although plaintiff alleges various medications prescribed by Drs. Viereckl-Prast, Conicelli, and Saleh did not alleviate his pain and that the doctors continued to prescribe such medications even after plaintiff complained they were ineffective in reducing his discomfort, such disagreement respects the proper course of treatment and, accordingly, is insufficient to satisfy the subjective prong of the constitutional analysis. That plaintiff believes

he should have received some other form of treatment or medication does not alter this outcome or render the treatment provided inadequate.

Furthermore, to the extent plaintiff did exhaust his claims inasmuch as they respect the MRI performed on February 14, 2018, which plaintiff alleges exacerbated his face and mouth pain, plaintiff fails plausibly to allege Drs. Viereckl-Prast, Conicelli, and Saleh performed the MRI, or ordered it to be performed, or oversaw Multi-Diagnostic Services, Inc.'s administration of the procedure.  Thus, plaintiff fails plausibly to plead the personal involvement of Drs. Viereckl-Prast, Conicelli, and Saleh in the administration of such procedure.

For the above reasons, plaintiff's Eighth Amendment claims against Drs. Viereckl-Prast, Conicelli, and Saleh must be dismissed.[5]

---

[5] Drs. Viereckl-Prast, Conicelli, and Saleh also argue plaintiff's claims should be dismissed on qualified immunity grounds.  The Court does not reach this argument, as plaintiff fails outright to state plausible Eighth Amendment deliberate indifference claims against these defendants.

**CONCLUSION**

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #49) and terminate Drs. Viereckl-Prast, Kenneth Conicelli, and M. Saleh as defendants in this action.

Plaintiff and counsel for defendant Multi-Diagnostic Services, Inc., are directed to appear for an initial telephone conference on July 30, 2020, at 11:00 a.m., at which time the Court will issue a discovery plan and scheduling order. Defense counsel shall make all necessary arrangements for plaintiff to appear by telephone. Plaintiff and defense counsel shall attend the conference by calling the following number and entering the access code when requested:

**Dial-In Number:** (888) 363-4749 (toll free) **or** (215) 446-3662

**Access Code:** 1703567

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: June 29, 2020
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge